IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00076-BNB

BRIAN C. STRAUB,

      Applicant,

v.

BARRY GOODRICH, Warden, BCCF, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

_____

ORDER STAYING CASE
_____

      Applicant, Brian C. Straub, is in the custody of the Colorado Department of

Corrections (CDOC) and is incarcerated currently at the Bent County Correctional

Facility in Las Animas, Colorado.  Mr. Straub has filed, *pro se*, an Amended Application

for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 4) challenging his

convictions in Denver District Court Case No. 07CR2494 for aggravated robbery and

second degree kidnapping.  He is serving an aggregate 10-year prison term.

      On February 3, 2014, Magistrate Judge Boyd N. Boland ordered Respondents to

file a Pre-Answer Response addressing the issues of timeliness and exhaustion of state

court remedies.  Respondents filed a Pre-Answer Response on February 18, 2014.

(ECF No. 9).  Mr. Straub filed a Reply on March 17, 2014.  (ECF No. 12).

      Mr. Straub asserts three claims in the Amended Application, with sub-parts.  The

parties agree that Applicant has not exhausted state court remedies for the ineffective

assistance of counsel (IAC) allegations raised in claim 3 of the Amended Application.

(ECF No. 4, at 6; No. 9, at 27).   The parties disagree about whether Applicant has

committed an anticipatory procedural default of sub-claims 1(a), 1(b), and 2(b) in the

state courts.[1]  (ECF No. 9, at 15-27; ECF No. 12, at 5-8).   Respondents concede that

claim 2(a) is exhausted.  (ECF No. 9, at 23).   Because the Application contains

unexhausted IAC claims for which Mr. Straub has an available state court remedy, it is a

mixed petition.

On July 18, 2014, Magistrate Judge Boland directed Mr. Straub to show cause,

within thirty (30) days, why the Application should not be dismissed as a mixed petition

under *Rose v. Lundy,* 455 U.S. 509, 522 (1982).   The Court ordered Applicant, in the

alternative, to dismiss voluntarily the unexhausted claims and proceed only with the

exhausted claim(s), or demonstrate that a stay of this action is warranted pursuant to

*Rhines v. Weber*, 544 U.S. 269, 275-76 (2005).[2]  Magistrate Judge Boland further

directed the Respondents to file a Supplement to the Pre-Answer Response addressing

whether a stay of this action is appropriate.

---

[1]If a habeas petitioner "failed to exhaust state remedies and the court to which the petitioner would
be required to present his claims in order to meet the exhaustion requirement would now find the claims
procedurally barred . . . there is a procedural default. . . . ." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1
(1991); *Anderson v. Sirmons*, 476 F.3d 1131, 1139-40 n.7 (10th Cir. 2007) (applying anticipatory
procedural bar).  In such circumstances, the technical requirement of exhaustion is satisfied because there
are no further state court remedies available to the petitioner.  *See Gray v. Netherland*, 518 U.S. 152, 161
(1996); *Coleman*, 501 U.S. at 732.  A claim that has been procedurally defaulted in the state courts on an
independent and adequate state procedural ground is precluded from federal habeas review, unless the
prisoner can meet the cause and prejudice or fundamental miscarriage of justice exception. *Coleman*, 501
U.S. at 750; *Cummings v. Sirmons*, 506 F.3d 1211, 1224 (10th Cir. 2007).

[2]In the Order to Show Cause, the Court observed that if Mr. Straub decided to dismiss the entire
petition without prejudice, he may be time-barred from returning to federal court at a later date.  (ECF No.
13, at 5-6).  It has come to the Court's attention that there was a mistake in the Order to Show Cause
concerning the calculation of the running of the AEDPA one-year period set forth in 28 U.S.C.§ 2244(d).
(*Id.*).  Taking into account the 49-day period in which Applicant could have appealed the trial court's denial
of his Colo. Crim. P. Rule 35(b) motion, during which the one-year period was tolled, *see* 28 U.S.C.
§ 2244(d)(2), it appears that only 143 days had elapsed on the AEDPA time clock at the time of
Applicant's federal filing.

Respondents filed their Supplement to Pre-Answer Response on August 14, 2014.  (ECF No. 16).  Applicant filed a Reply to Order to Show Cause on September 2, 2014.  (ECF No. 17).

## I.  Applicable Legal Standards

Mr. Straub's *pro se* filings are afforded a liberal construction.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court does not act as an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the applicant has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights.  *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).  The exhaustion requirement is satisfied once the federal claim has been presented fairly to the state courts.  *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).  Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack."  *Dever*, 36 F.3d at 1534.  "The exhaustion requirement is not one to be overlooked lightly."  *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995).  A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies.  *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).

Even if state remedies properly have been exhausted as to one or more of the claims presented, a habeas corpus application is subject to dismissal as a mixed

petition unless state court remedies have been exhausted for all of the claims raised. *See Rose*, 455 U.S. at 522; *Harris v. Champion*, 48 F.3d 1127, 1133 (10th Cir. 1995).In order to avoid dismissal of a habeas application as a mixed petition, an applicant may elect to dismiss any unexhausted claims and pursue only those claims for which state remedies already have been exhausted.  Alternatively, if an applicant wishes to pursue all of his claims in federal court, the premature habeas action should be dismissed without prejudice so that the applicant may exhaust state remedies.  Assuming that the AEDPA one-year limitation period, *see* 28 U.S.C. § 2244(d), has not expired, he then may file a new application for a writ of habeas corpus once all of his claims are exhausted.

A decision to dismiss unexhausted claims and pursue immediately only exhausted claims likely will bar an applicant from seeking review of the unexhausted claims in a second or successive application.  *See* 28 U.S.C. § 2244(b).  Alternatively, if an applicant elects to dismiss the entire action and return to state court to exhaust the unexhausted claims before seeking relief in federal court, the one-year limitation period in § 2244(d) will be applied to any new federal court action the applicant seeks to file. The time during which a 28 U.S.C. § 2254 application is pending in the federal court does not toll the one-year limitation period in § 2244(d).  *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (holding that "an application for federal habeas corpus review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2)" and "therefore did not toll the limitation period during the pendency of [an applicant's] first federal habeas petition").

The federal habeas court may stay a § 2254 application where the applicant's return to federal court will be barred by the one-year limitations period.  *Rhines*, 544 U.S. at 275-76.  However, a stay is available only in limited circumstances.  *Id.* at 277.

## II.  Analysis

Under *Rhines*, the Court will not stay a mixed petition pending total exhaustion, unless the applicant shows: good cause for his failure to exhaust his federal claims in the state court; that his unexhausted claims are not "plainly meritless"; and, that he has not engaged in abusive litigation tactics or intentional delay.  *Rhines*, 544 U.S. at 277-78.

### 1.   Has Applicant shown good cause for his failure to the IAC claims in the state courts?

Respondents argue in the Supplement to Pre-Answer Response that Mr. Straub cannot demonstrate good cause for his failure to exhaust his IAC claims in the state courts.  Respondents emphasize that the IAC claims have been ripe for assertion in a state post-conviction motion since the Colorado Court of Appeals issued the mandate in Applicant's direct appeal proceeding on February 13, 2013.[3]  (*See* ECF No. 16, at 9-10; No. 16-1).  Respondents assert that if Mr. Straub was able to articulate his IAC claims in the *pro se* § 2254 Application, he could have presented the same claims in a *pro se* state post-conviction motion before the one-year limitation period expired.

---

[3]The parties agree that Applicant has three years from the date his direct appeal concluded in 2013, to file a state post-conviction motion pursuant to Colo. Crim. P. R. 35(c) to present his IAC claims. (ECF No. 16, at 10; No. 17, at 7); *see also* COLO.REV.STAT. § 16-5-402 (2013); *People v. Hampton*, 857 P.2d 441, 444 (Colo. App. 1992).  However, the state limitation period does not extend the time to file a federal habeas action under AEDPA.  *See Burger v. Scott*, 317 F.3d 1133, 1138 (10th Cir. 2003) ("We recognize that, as a federal statute that interacts with state procedural rules, § 2244(d) will sometimes force a state prisoner to act expeditiously to preserve his federal claims despite the procedural lenience of state law, which may forgive substantial delay.").

For his part, Mr. Straub states that he retained private counsel, Mark Burton, on December 26, 2012, who agreed to represent him in filing a motion for post-conviction relief, pursuant to Colo. Crim. P. Rule 35(c), in state court. (ECF No. 17, at 5; No. 17-1, at 44). At the time Mr. Burton was retained, he told Applicant that he "expected that a hearing will be held on the matter before the end of this year." (ECF No. 17, at 6; No. 17-1, at 44). Mr. Straub alleges that Mr. Burton did not review the discovery file provided to him by Applicant's direct appeal counsel until July 2013, and did not request funds to hire an investigator until January 2014. (ECF No. 17, at 5; No. 17-1, at 45). Mr. Straub states that he prepared and filed his *pro se* § 2254 Application in January 2014, "before it was revealed that Mr. Burton has not yet begun investigations and needed additional funding."[4] (*Id.*). In the Amended § 2254 Application, filed on January 30, 2014, Mr. Straub states that "the deadline to file this application is February 13, 2014, making it necessary to file in order not to lose the opportunity for Federal relief." (ECF No. 4, at 4).

"Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the applicant's failure to exhaust his claims first in state court." *Rhines*, 544 U.S. at 277. The Supreme Court in *Rhines* did not elaborate on the meaning of "good cause." In *Doe v. Jones*, ___ F.3d ___, 2014 WL 3906849 (10th Cir. Aug. 12, 2014), the Circuit Court of Appeals for the Tenth Circuit

---

[4]Mr. Straub's "support group" engaged in a fund-raising campaign to pay for counsel's services from March 2014 to May 2014, but the group's efforts fell far short of the fund-raising goal needed for Applicant to continue to retain Mr. Burton as counsel. (ECF No. 17, at 6-7; No. 17-2, at 23-26).

acknowledged that other courts have found the *Rhines* good cause requirement satisfied when the petitioner's failure to exhaust his claims in state court was due to: (1) the ineffective assistance of post-conviction counsel, *see Blake v. Baker,* 745 F.3d 977, 983 (9th Cir. 2014); (2) the prosecution's wrongfully withholding information, *see Jalowiec v. Bradshaw*, 657 F.3d 293, 304-05 (6th Cir. 2011); or, (3) by "any external objective factor that cannot fairly be attributable to [petitioner]," *Hernandez v. Sullivan*, 397 F.Supp.2d 1205, 1206-07 (C.D.Cal. 2005) (analogizing "good cause" requirement of *Rhines* to "cause" requirement in the procedural default context).  2014 WL 3906849, at *7.

Other courts have adopted a standard for showing "good cause" under *Rhines,* based on the Supreme Court's statement in *Pace v. DiGuglielmo,* 544 U.S. 408, 416 (2005), that "[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *See*, *e.g., Whitley v. Ercole*, 509 F.Supp.2d 410, 417-419 (S.D.N.Y. 2007); *Rhines v. Weber*, 408 F.Supp.2d 844 (D.S.D.2005) (on remand); *Smith v. Wolfe*, No. 2:04-CV-1010, 2005 WL 2373431, at *6 (S.D.Ohio Sept. 27, 2005); *Menzies v. Friel*, No. 03 CV 0092, 2005 WL 2138653, at *2 (D.Utah Sept. 1, 2005); *Bartelli v. Wynder*, No. Civ. A. 04-CV-3817, 2005 WL 1155750 at *2-3 (E.D.Pa. May 12, 2005)).

The good cause standard derived from *Pace* is more lenient than the showing necessary to establish "cause" under *Coleman* for a procedural default of state law claims, which other courts have adopted as the standard for showing "good cause" under *Rhines.  See*, *e.g.*, *Hernandez*, 397 F.Supp.2d at 1206-07 (finding good cause under *Rhines* where the failure to exhaust state remedies is caused by an "objective factor external to the petitioner which cannot fairly be attributed to him or her," citing

*Coleman*); *see also Ramdeo v. Phillips*, No. 04-CV-1157 (SLT), 2006 WL 297462, at **5-6 (E.D.N.Y. 2006) (adopting *Coleman* "cause" standard to establish "good cause" for a stay under *Rhines*) (collecting district court cases); *Trotter v. McKune*, No. 09-3076-WEB, 2010 WL 750248, at *8 (D. Kan. 2010).

The Court agrees with the reasoning of those courts concluding that the standard for good cause under *Rhines* is not as stringent as the "cause" standard for finding a procedural default. *See also Rhines*, 544 U.S. at 279 (Stevens, J., concurring) (noting that "'good cause' for failing to exhaust state remedies more promptly . . . is not intended to impose the sort of strict and inflexible requirement that would 'trap the unwary pro se prisoner'" (quoting *Rose*, 455 U.S. at 520); *see id.* (Souter, J., concurring) (proposing to drop altogether the "good cause" condition). *Accord Blake*, 745 F.3d at 984 at n.7 (noting that the Court's statement in *Pace* suggests that the showing for "good cause" under *Rhines* is lesser than the cause standard discussed in *Coleman*).

In this case, Mr. Straub retained counsel to investigate and file a state post-conviction motion and relied reasonably on the representations of counsel that the motion would be filed by the end of 2013. When no motion was forthcoming, Applicant filed a federal Application because he feared that the one-year AEDPA period may run before his state post-conviction motion was filed. Although "ignorance of the law does not constitute good cause" for issuing a stay under *Rhines*, *see Josselyn v. Dennehy,* 475 F.3d 1, 5 (1st Cir. 2007), Mr. Straub's confusion about how to proceed in January 2014 was understandable. At that time, Applicant was still relying on counsel to assert the IAC claims in a state post-conviction motion. The Court finds that the circumstances

in this case support a finding of good cause.  Accordingly, the Court will address the remaining *Rhines* factors.

### 2.      Are the IAC claims "plainly meritless"?

Respondents next argue that a stay is not warranted in this action because Mr. Straub's IAC claims are "plainly meritless."  (ECF No. 16, at 13).  *See Rhines*, 544 U.S. at 277.

To prevail on his IAC claims, Applicant must show that: (1) counsel's legal representation fell below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Judicial scrutiny of counsel's performance is highly deferential. *Id.*  at 689. Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong."  *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted).

Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 693.  The likelihood of a different result must be substantial, not just conceivable.  *Id.*

Mr. Straub asserts in claim 3 of the Amended Application that his trial counsel was ineffective in failing to: (a) investigate the license plate database at DIA, which counsel knew about prior to trial (ECF No. 4, at 22-23); (b) object to the prosecution's late disclosure of the database (*id.* at 22); (c) investigate the criminal backgrounds of three prosecution witnesses (*id.* at 23-24); (d) adequately prepare to undermine or rebut the prosecution's evidence that DNA in a ski mask found at the scene matched

Applicant's DNA (*id.* at 24-54); (e) object to the prosecutor's questions of Applicant and alibi witnesses regarding the lack of corroboration for their testimony on their whereabouts during the robbery (*id.* at 25); (f) object to the prosecutor's questions and argument suggesting Applicant had a burden to prove his innocence (*id.* at 26); (g) request a curative instruction or a mistrial after his burden-shifting objection to the prosecution's closing argument was overruled (*id.*); and, (h) rebut the prosecution's suggestion that alibi witnesses had not provided accurate contact information to, and had not otherwise cooperated with, the prosecution (*id.* at 25-26).

Respondents argue that the IAC claims fail because they are based on strategic decisions made by counsel or are otherwise foreclosed by the Colorado Court of Appeals' conclusions on direct appeal that some of the underlying bases of the IAC claims lack merit.  (ECF No. 16, at 17-41).  The Court finds, however, that at least one of Applicant's IAC claims has potential merit.

Mr. Straub asserts that defense counsel made a conscious decision not to investigate records maintained by Denver International Airport (DIA) concerning the license plate numbers of vehicles entering and exiting the airport parking lot.  (ECF No. 4, at 22-23).  Mr. Straub maintains that the DIA index of license plate numbers corresponding to vehicles that entered the parking lot on the date of the robbery supports his alibi testimony at trial that he was at DIA close to the time the robbery was committed. (ECF No. 4, at 23).  Applicant claims that counsel's failure to investigate evidence that would have supported his alibi defense was not reasonable trial strategy and prejudiced him at trial.  (*Id.* at 22-24).

### a.  state court proceedings

Following Mr. Straub's conviction, defense counsel filed a motion for a new trial pursuant to Colo. R. Crim. P. 33, asserting that newly discovered evidence demonstrated Applicant's innocence (hereinafter "NDE motion").   (ECF No. 17-1, at 96). Specifically, counsel argued that videotape surveillance footage from the Coyote Ugly bar in downtown Denver where the robbery was committed showed the gunman leaving the bar at 2:02 p.m.   (*Id.*).   Counsel submitted information from the State of Colorado Department, Department of Revenue, Motor Vehicles Division and a DIA "Transaction Log," provided by the City and County of Denver pursuant to a post-trial Colorado Open Records Act request, which demonstrated that a vehicle registered to Applicant and his father arrived at the DIA parking lot at 2:31 p.m. on the day of the robbery.   (*Id.* at 97-98; *see also id.* at 24-27).   Defense counsel also attached to the motion for a new trial thirteen affidavits from individuals who were asked to drive the quickest route from the Coyote Ugly bar to the DIA parking lot and to record their times.   (*Id.* at 100, 103).   The affidavits demonstrated that no one completed the drive in less than 31 minutes.   (*Id.*). Counsel thus argued that it was not possible to drive from the Coyote Ugly bar to DIA within 27 minutes and 55 seconds (between 2:02 p.m. and 2:31 p.m.), and, therefore, Mr. Straub would have been acquitted, had the new evidence been presented to the jury at trial.   (*Id.* at 100).

The state trial court denied the motion for a new trial on the ground that Applicant and his counsel "have not shown that they exercised diligence to discover all possible evidence favorable to the Defendant prior to and during the trial."   State Court R., 6/16/08 Hrg. Tr., at 5 (ECF No. 16-13, at 4). The trial court further found that Applicant had failed to establish that the newly discovered evidence "would probably produce an acquittal." *Id.*

In Applicant's direct appeal proceeding, the Colorado Court of Appeals affirmed the trial court's denial of the motion for a new trial on the ground that Applicant had not acted diligently to discover the evidence prior to, or during, trial. *See People v. Brian Straub*, No. 08CA1587 (Colo. App. March 8, 2012) (unpublished) (ECF No. 4, at 47). The state appellate court declined "to reach the alternative ground for the court's ruling." (*Id.*).

### b.  preliminary analysis of federal IAC claim

The timing of the robbery and Applicant's arrival at DIA were critical issues at trial.  To the extent defense counsel made a strategic decision not to investigate available records at DIA that would have strengthened Mr. Straub's alibi defense, such a strategy may have been unreasonable. *See Bigelow v. Haviland*, 576 F.3d 284, 287, 291-92 (6th Cir. 2009) (concluding that counsel was ineffective in failing to reasonably investigate the petitioner's alibi defense); *Mosley v. Atchison*, 689 F.3d 838, 849 (7th Cir. 2012) (if the defendant's location at the time of the crime is a critical issue in the case, counsel's failure to investigate additional evidence to support alibi defense may constitute deficient representation); *see also Code v. Montgomery*, 799 F.2d 1481, 1483-84 (11th Cir.1986) (recognizing that counsel is ineffective for failing to investigate potential alibi witnesses, if the sole defense theory is alibi).

To prevail, Mr. Straub must also show that he was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 693.  Upon careful review of the state trial transcripts, the Court finds that although the balance may tip in favor of the prosecution, it is a close question whether there is a reasonable probability that the additional alibi evidence, if admitted, would have affected the outcome of Applicant's trial.  As such, Applicant's IAC claim is not "plainly meritless" and the state courts should be given the

first opportunity to pass on the merits.  *See*, *e.g.*, *Whitley*, 509 F.Supp.2d at 420

(applying the *Rhines* criteria, and noting that, "[h]aving reviewed the record and

Petitioner's submissions, I conclude that Petitioner has shown that his unexhausted

claim alleging ineffective assistance of counsel has potential merit"); *Keating v. New*

*York*, 708 F.Supp.2d 292, 299 n. 11 (E.D.N.Y.2010) (Where it is unclear whether a

claim is patently frivolous, federal habeas courts should be guided by the rationale that

"state courts must, as a matter of comity, be afforded the opportunity to first pass upon

any habeas claim that is at least potentially meritorious."); *see also Miller v. Dretke*, 431

F.3d 241, 256 (5th Cir. 2005) (Garza, J., dissenting) ("Based on the above, I find the

materiality question to be close. At the very least, Miller's *Brady* claim is not plainly

meritless. For that reason, I would remand to the district court with instructions to

determine if the first and third prongs of *Rhines v. Weber* are satisfied and to stay and

abey the proceedings if they are.").

Accordingly, the Court finds that Mr. Straub has met the second requirement for

a stay under *Rhines* because at least one of his unexhausted claims has potential

merit.[5]

### 3.  Has Applicant engaged in intentionally dilatory litigation tactics?

The final requirement under *Rhines* is that the Applicant not have engaged in any

abusive litigation tactics or intentional delay.  *Rhines*, 544 U.S. at 278.

Respondents contend that Applicant has engaged in intentional dilatory tactics

because the NDE motion was based on evidence known to the defense before trial.

(ECF No. 16, at 41-42).  Respondents maintain that the NDE motion was an improper

---

[5]The Court need not decide whether Applicant's other unexhausted claims have potential merit.

attempted second bite-of-the-apple that delayed the state court proceedings. (*Id.*). Respondents assert that "the NDE motion, coupled with applicant's repeated but empty promises that IAC claims will soon be filed in state court, suggest that the NDE motion was an attempt to delay finality in the face of knowledge that an IAC attack would necessarily fail." (*Id.* at 43). The Court is not persuaded that Applicant attempted to intentionally delay exhaustion of his IAC claims.

The NDE motion was filed and decided by the state trial court in less than two weeks. (ECF No. 17-1, at 101 (NDE motion filed on June 3, 2008); ECF No. 16-13, at 4 (NDE motion denied on June 16, 2008)). Although Mr. Straub's filing of an NDE motion may have delayed temporarily his direct appeal proceeding, there is nothing in the parties' federal filings to indicate that the purpose of the NDE motion was to intentionally post-pone exhaustion of Applicant's IAC claims. Further, once the Colorado Court of Appeals issued the mandate in the direct appeal proceeding in February 2013, Mr. Straub made diligent efforts to obtain state post-conviction counsel. Once he retained Mr. Burton in December 2012, Applicant relied reasonably on counsel's representation that he would file a state post-conviction motion to assert the IAC claims by the end of 2013. However, when counsel did not file a state post-conviction motion as promised, Applicant filed a federal Application, fearing that he was running up against the one-year AEDPA time bar. The Court finds that Mr. Straub did not engage in intentionally dilatory litigation tactics in exhausting his IAC claims before he filed his federal Application.

Mr. Straub's representations to this Court do not warrant a contrary finding. At the time Mr. Straub filed his federal Application on January 9, 2014, he represented that his IAC claims "are currently included in a State Ineffective Assistance of Counsel claim via Colorado Crim. P. 35(c), that is still pending." (ECF No. 1, at 4). In his Amended

Application, on January 30, 2014, he clarified that the IAC claims were then included in a state post-conviction motion "pending to be filed." (ECF No. 4, at 4).  Sometime thereafter, Applicant learned that counsel has not yet begun investigating the IAC claims, or drafting a state post-conviction motion, because counsel required additional funding. (ECF No. 17, at 6).  Applicant represents that he began drafting *pro se* a state post-conviction motion asserting his unexhausted claims in April 2014. (*Id.* at 7).[6]

In sum, Mr. Straub has not intentionally delayed state court resolution of his IAC claims.  And, because he has satisfied the other *Rhines* factors, the Court concludes that a stay of this action is warranted while Mr. Straub exhausts state court remedies.

*Rhines* instructs that the "district courts should place reasonable time limits on a petitioner's trip to state court and back."  544 U.S. at 278 (citing *Zarvela v. Artuz*, 254 F.3d. 374, 381 (2d Cir. 2001) ("[District courts] should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed")).  Accordingly, it is

ORDERED that the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 4), filed by Applicant Brian C. Straub, is STAYED.  It is

---

[6]A copy of the draft state post-conviction motion is attached to the Applicant's Reply to Order to Show Cause. (ECF No. 17, at 53-69; ECF No. 17-1, at 1-16).  It is not clear whether Applicant has filed this motion in the state district court.

FURTHER ORDERED that Mr. Straub shall file his state post-conviction motion to assert any unexhausted claims **within thirty (30) days of this Order**.  It is

FURTHER ORDERED that the parties shall file a report **every thirty (30) days** concerning the status of the state court post-conviction proceeding, until further notice.

DATED at Denver, Colorado, this __30th__ day of __September__, 2014.

BY THE COURT:


__s/Lewis T. Babcock__
LEWIS T. BABCOCK, Senior Judge
United States District Court