**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martinez**

Civil Action No. 14-cv-0076-WJM

BRIAN C. STRAUB,

     Applicant,

v.

BARRY GOODRICH, BCCF Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

The matter before the Court is an Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Docket No. 4), filed *pro se* by Applicant, Brian C. Straub.   Upon consideration of Respondents' Answer (Docket No. 68), Applicant's Reply (Docket No. 69), and the state court record, the Court denies the Amended Application.

### I. Procedural Background

On May 2, 2008, Applicant was convicted of aggravated robbery and second-degree kidnapping in Denver District Court Case No. 07CR2494.   (Docket No. 1 at 1-2).   He was sentenced to consecutive 10-year terms for the offenses.[1]   (*Id.* at 1).

---

[1] In September 2017, Applicant was released to a community corrections facility in Lakewood, Colorado. (Docket Nos. 41, and 48 at 1).   He remains in custody for purposes of pursuing federal habeas relief. *See Jones v. Cunningham*, 371 U.S. 236 (1963) (holding that a person released on parole is "in custody" for purposes of the federal district court's habeas corpus jurisdiction).

Applicant's convictions were affirmed on direct appeal in *People v. Brian C. Straub*, No. 08CA1587 (Colo. App. March 8, 2012) (unpublished) (*Straub* I). (Docket No. 4 at 29-44). The Colorado Supreme Court denied his petition for certiorari review on January 7, 2013. (*Id.* at 50). Applicant did not file a petition for certiorari review in the United States Supreme Court.

Applicant initiated this federal habeas proceeding on January 9, 2014. (Docket No. 1). He filed an Amended Application on January 30, 2014 (Docket No. 4) asserting the following claims:

> 1. The prosecutor violated Applicant's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose:
>
> (a) The existence of a database of vehicle license plate numbers entering and leaving Denver International Airport (DIA) parking facilities, which, had it been reviewed prior to trial, would have shown that a vehicle registered to Applicant and his father entered DIA at the approximate time of the robbery, which in turn would have corroborated Applicant's alibi defense (Docket No. 4 at 4, 9-13);
>
> (b) Criminal histories of three prosecution witnesses (*id.* at 4, 13-14).
>
> 2. The prosecutor engaged in misconduct, in violation of due process by:
>
> (a) suggesting through cross-examination of defense witnesses and in rebuttal closing argument, that Applicant had the burden of proving his innocence (*id.* at 5, 14-21);
>
> (b) commenting, during cross-examination of Applicant, on Applicant's invocation of the Fifth Amendment privilege of remaining silent (after speaking with police) (*id.* at 17).
>
> 3. Trial counsel was constitutionally ineffective in failing to:
>
> (a) investigate the license plate database at DIA, which counsel

knew about prior to trial (*id.* at 5, 22-23);

(b) object to the prosecution's late disclosure of the database (*id.* at 22);

(c) investigate the criminal backgrounds of three prosecution witnesses (*id.* at 5-6, 23-24);

(d) adequately prepare to undermine or rebut the prosecution's evidence that DNA in a ski mask found at the scene matched Applicant's DNA (*id.* at 6, 24-25);

(e) object to prosecution questions of alibi witnesses MH and SF, which suggested that their lack of corroboration for their alibi testimony undermined the credibility of their testimony (*id.* at 25);

(f) object to prosecution questions and argument suggesting Applicant had a burden to prove his innocence (*id.* at 26);

(g) request a curative instruction or a mistrial after Applicant's burden-shifting objection to the prosecution's closing argument was overruled (*id.*); and,

(h) rebut the prosecution's suggestion that alibi witnesses had not provided accurate contact information to, or otherwise cooperated with, the prosecution (*id.* at 25-26).

On September 30, 2014, Senior District Judge Lewis T. Babcock issued an Order Staying Case pending Applicant's exhaustion of state court remedies for the ineffective assistance of counsel claims asserted in the Amended Application. (Docket No. 18).

Applicant notified the Court on September 13, 2017, that the Colorado Court of Appeals had affirmed the state district court's denial of post-conviction relief in *People v. Brian C. Straub*, No. 15CA153 (Colo. App. Sept. 7, 2017) (unpublished) (*Straub* II). (Docket No. 39 at 33-62). The case was randomly assigned to the undersigned (Docket No. 55), and the Court issued an Order to Dismiss in Part and for Answer on

December 27, 2017. (Docket No. 57). In the December 27 Order, the Court

dismissed claim 2(b) of the Amended Application as procedurally barred. (*Id.* at 9-10).

The Court further determined that one of the allegations in sub-claim 3(g) (counsel was

ineffective in failing to request a mistrial) was procedurally defaulted, but deferred ruling

on whether Applicant had shown cause to excuse the procedural default, pending

receipt of the state court record and Respondents' Answer on the merits. (*Id.* at 12-

14). The parties thereafter filed briefing on the merits of the remaining claims.

## II. Legal Standards

### A. 28 U.S.C. § 2254(d)

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless

the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d). The applicant bears the burden of proof under § 2254(d). *See*

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a

statement of reasons by the state court for rejecting the claim. *Harrington v. Richter*,

562 U.S. 86, 98-99 (2011). In particular, "determining whether a state court's decision

resulted from an unreasonable legal or factual conclusion does not require that there be

an opinion from the state court explaining the state court's reasoning." *Id.* at 98. Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 98. Thus, when a state court rejects a federal claim without expressly addressing that claim, a rebuttable presumption arises that the federal claim was adjudicated on the merits. *See Johnson v. Williams*, 568 U.S. 289, 301 (2013).

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the court must answer under § 2254(d)(1) is whether the applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice.* Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1). *See id.* at 1018.

If a clearly established rule of federal law is implicated, the court must determine

whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The federal court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

> [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington*, 562 U.S. at 101 (internal quotation marks and citation omitted). In conducting this analysis, the court "must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Harrington,* 562 U.S. at 88 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington,* 562 U.S. at 102.

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

The court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). The court "must defer to the state court's factual determinations so long as 'reasonable minds reviewing the record might disagree about the finding in question.'" *Smith v.*

*Duckworth*, 824 F.3d 1233, 1241 (10th Cir. 2016) (quoting *Brumfield v. Cain*, ___ U.S. ___, 135 S.Ct. 2269, 2277 (2015)).   Nevertheless, "if the petitioner can show that 'the state courts plainly misapprehend[ed] or misstate[d] the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable.'" *Id.* (alterations in original) (internal quotation marks and citation omitted).

Pursuant to § 2254(e)(1), the court presumes that the state court's factual determinations are correct and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence.   "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

If a claim was not adjudicated on the merits in state court, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply.   *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## B. *Pro Se* Litigant

Applicant is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).   However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to

state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *Pro se* status does not entitle an applicant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### III. State Trial Court Proceedings

Applicant presented two theories of defense at trial: (1) alibi—he was at DIA with a friend at the "exact time" of the robbery (State Court Record ("R."), 4/28/08 Trial Tr. at 88-89[2] (defense opening statement)); and, (2) the police failed to investigate alternate suspects—the two employees who were working at the time of the robbery (M.B. and C.B.), and a third person (R.C.) who was Applicant's housemate and a former employee (*id.* at 87-88).

The following evidence was presented at trial. At approximately 2:00 p.m. on April 21, 2006, a masked gunman robbed the Coyote Ugly Saloon, a bar in downtown Denver located within the Denver Pavilions mall. (R., 4/28/08 Trial Tr., Melissa Bynens testimony, at 188-201; 4/29/08 Trial Tr. Chad Bryan testimony, at 498-508). Two employees, M.B. and C.B. were present in the bar at the time of the robbery. The robber pointed a gun at C.B.'s head and demanded that M.B. give him the bag containing approximately $15,000 of the bar's cash receipts that M.B. had intended to

---

2 For ease of reference, the Court's citation to page numbers in the state court record is to the page numbers as reflected on the pdf.doc contained in the CD Rom submitted by the Denver District Court.

deposit at the bank that afternoon. (*Id*.). Despite the robber's efforts to conceal his identity by wearing a ski mask and using a fake accent, M.B. and C.B. recognized the robber as Applicant, a former manager of the bar with whom both had worked. (*Id*.). M.B. testified that she recognized Applicant's physique, mannerisms, and "familiar presence." (R., 4/28/08 Trial Tr., Bynens testimony, at 192-93). C.B. testified that he recognized Applicant by his height and body type, and also because he had heard Applicant use the same fake accent when they worked together. (R., 4/29/08 Trial Tr., Bryan testimony, at 501, 503). M.B. and C.B. initially thought that Applicant was playing a joke on them. M.B. testified, "I just didn't understand what was going on. Like – felt like I was on Punk'd or something . . . ." (R., 4/28/08 Trial Tr., Bynens testimony, at 197). M.B. further testified that immediately after the robber left, she was scared, but still thought he might come back and say "Gotcha!" (*Id.* at 199-200). C.B. testified that he was so convinced it was a joke that, even as the robber held a gun to the back of his head, he grabbed straws from the bar and threw them over his shoulder at the person whom he recognized as Applicant. (R., 4/30/08 Trial Tr., Bryan testimony, at 503-04). However, after the robber left the bar with the money and did not return, the bar employees realized it was not a hoax and called 911. (*Id.* at 507; 4/28/08 Trial Tr., Bynens testimony, at 200-01).

A police officer who responded to the scene retrieved a black ski mask that had been discarded on the stairs outside the back entrance to the bar. (R., 4/28/08 Trial Tr., Officer Trent Tatum testimony, at 377; People's Ex. 52). A surveillance videotape from the interior of the Coyote Ugly showed the robber leaving the bar at 2:02 p.m. (R.,

4/28/08 Trial Tr., Detective Alfonso Cervera testimony, at 154-55; Bynens testimony, 202-03; People's Ex. 40).   Surveillance video footage taken from outside of the Denver Pavilions showed a man matching the robber's description leaving the shopping center with a trash bag at 1:53 p.m., and a police car arriving at the back door of the Coyote Ugly at 2:02 p.m.[3]   (R., 4/28/08 Trial Tr., Detective Cervera testimony, at 141-44; People's Ex. 49).   Applicant could not be positively identified as the robber from the images on the video surveillance tapes.   (R., 4/28/08 Trial Tr., Cervera testimony, at 143, 156-57).

Several days after the robbery, Applicant voluntarily provided police investigators with fingerprints and a DNA sample.   (R., 4/29/08 Trial Tr., Cervera testimony, at 559-62).   Applicant was not told that he was a suspect in the robbery and he informed police that he planned to leave the country for a military tour in Iraq.   (4/30/08 Trial Tr., Brian Straub testimony, at 777-78, 790).

Applicant's DNA sample matched the DNA taken from inside the ski mask police found outside the bar after the robbery.   (R., 4/30/08 Trial Tr., Elizabeth Hewitt testimony, at 633-37; Sylvia Thurmond testimony, at 648, 661).   An arrest warrant was issued and Applicant was arrested in April 2007, after he returned from Iraq.   (4/29/08 Trial Tr., Cervera testimony, at 562-63; 4/30/08 Trial Tr., Straub testimony, at 790).

During the defense case, several witnesses testified in support of Applicant's alibi defense.   One witness testified that he and Applicant belonged to a Brazilian martial

---

3 As noted by the Colorado Court of Appeals in *Straub II*, the "discrepancies between the time stamps in the video were not conclusively resolved at trial."   (Docket No. 39 at 35; *see also* 4/28/08 Trial Tr., Detective Cervero testimony, at 154-55).

arts group and, in connection with an annual martial arts event, Applicant was to pick up two visiting masters at DIA on April 21, 2006, whose flights arrived at 1:50 p.m. and 2:00 p.m. (R., 4/30/08 Trial Tr., Robert McNaughton testimony, at 678-688). Another witness testified that he and Applicant were running errands together in Denver on April 21 and then went to DIA to pick up the masters. (R., 4/30/08 Trial Tr., Michael Hove testimony, at 739). In response to defense counsel's query about what time the two men drove to DIA, the witness responded: "I know the no-later-than time was 2 o'clock to be there to pick them up." (*Id.*, Hove testimony, at 740). An additional witness testified that Applicant met him at the DIA baggage claim area on the afternoon of April 21 and that his flight was "on time." (*Id.*, Sebastio Felix testimony, at 705-08).

Applicant also testified at trial. He told the police during his initial interview that he went to DIA at approximately 1:30 p.m. to pick up the Brazilian martial arts masters. (*Id.*, Straub testimony, at 782). At trial, he stated that he arrived at DIA "around 2:00 o'clock" and that one of the visiting masters was waiting for him when he arrived. (*Id.* at 804).

During the prosecution's rebuttal case, a detective testified that because he did not find a vehicle registered to Applicant in the Colorado motor vehicle registration database, he was unable to use the DIA license plate index to verify the time Applicant arrived at DIA on the day of the robbery. (R., 4/30/08 Trial Tr., Detective Richard Polack testimony, at 811-12). The detective further testified that the drive from downtown Denver to DIA at takes approximately 25-27 minutes. (*Id.* at 812).

R.C., Applicant's then housemate and one of the "alternate suspects" identified

by the defense, testified for the prosecution that he drove to Houston on the day of the robbery; that Applicant owned a handgun similar to the one he saw the robbery carrying on the video surveillance tape from inside the bar; and, that he, Applicant, M.B. and C.B. were all friends. (4/29/08 Trial Tr., Ross Chacon testimony, at 404-419). Applicant also testified that R.C. left for Texas the morning of the robbery. (R., 4/30/08 Trial Tr. at 801-02). R.C. is slightly taller and of broader build than the Applicant. (R., 4/29/08 Trial Tr., Bynens testimony, at 317-18; *id.*, Bryan testimony, at 517).

The prosecutor argued in closing that the evidence showed beyond a reasonable doubt Applicant was the robber. (R., 4/30/08 Trial Tr. at 835-838). Defense counsel argued in closing that Applicant was framed by M.B., C.B. and R.C. (*id.* at 843-860) and that "the evidence is clearly uncontroverted that [Applicant] was at DIA when it happened." (*Id.* at 860). In rebuttal, the prosecution contended that there was no credible evidence to support Applicant's alternate suspect theory (*id.* at 864-66), and that "[t]here was plenty of time for the defendant to do the crime and get to the airport." (*Id.* at 868).

After trial, Applicant filed a motion for new trial under Colorado law based on newly discovered evidence. (R., Court File, at 107). In the motion, Applicant stated that the defense learned about the existence of a DIA license plate index on the last day of trial, when the detective mentioned it during the prosecution's rebuttal case. (*Id.* at 108). Applicant further stated that he was unaware of the documentary evidence before trial because he was informed that any surveillance images from DIA had been destroyed. (*Id.*). Applicant argued that the DIA license plate index from the date of

the robbery showed that a vehicle registered in his name arrived at the DIA parking lot at 2:31 p.m.; surveillance images taken at the bar showed the robber leaving at 2:02 p.m.; and, that he could not possibly have driven from downtown Denver to DIA in 29 minutes.   (*Id.* at 108-111).   The attachments to Applicant's motion established that there was a car registered jointly to Applicant and his father at the time of the robbery, and the DIA license plate index database reflected its arrival at DIA at 2:31 p.m.   (*Id.* at 115-116, 118).   Applicant also provided affidavits from several persons who stated that the duration of the drive from downtown Denver to DIA in the middle of the afternoon is 31-39 minutes. (*Id.* at 121-138).

The trial court denied the motion without a hearing, ruling that defense counsel failed to exercise diligence in discovering all possible evidence that was favorable to Applicant, and that the motion failed to show that the newly discovered evidence probably would have resulted in an acquittal.   (R., 6/16/08 Hrg. Tr. at 900-01).

## IV. Analysis of Claims

### A. Sub-claims 1(a) and 1(b)

Applicant contends in claim 1 that the prosecution violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose: (a) the existence of a database of vehicle license plate numbers entering and leaving DIA parking facilities, that, had it been reviewed prior to trial, would have shown that a vehicle registered to Applicant and his father entered DIA at the approximate time of the robbery, which in turn would corroborate Applicant's alibi defense (Docket No. 4 at 4, 9-13); and, (b) the criminal histories of three prosecution witnesses (*id.* at 4, 13-14).

## 1. Applicable Supreme Court law

Suppression "of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment."  *Brady*, 373 U.S. at 87. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The government's obligation to disclose exculpatory evidence exists independent of a request by the accused.  *Strickler,* 527 U.S. at 280.

Prejudice exists "when the suppressed evidence is material for *Brady* purposes."  *Banks v. Dretke*, 540 U.S. 668, 691 (2004).  Generally, evidence is material "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). A reasonable probability of a different result exists if "'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Strickler*, 527 U.S. at 290 (quoting *Kyles*, 514 U.S. at 435). The court evaluates whether undisclosed evidence is material in the context of the entire record.  *See United States v. Agurs*, 427 U.S. 97, 112 (1976).

## 2. Failure to disclose DIA license plate index

### a. Colorado Court of Appeals decision

Applicant asserted in his state post-conviction proceeding that the prosecution's

failure to inform the defense prior to trial that there was a DIA license plate index

violated his due process rights under *Brady*, and that defense counsel was ineffective in

failing to investigate the DIA license plate index.   In *Straub II*, the Colorado Court of

Appeals made the following relevant findings in Part III.A.1 of the opinion (addressing

the ineffective assistance of counsel claim):

> The DIA index evidence shows Straub's vehicle arriving at DIA at 2:31 p.m., but Straub's alibi at trial rested expressly on a claim that he had arrived at DIA half an hour earlier than that—at 2:00 p.m.   Thus, although the DIA index lends support to the broad outlines of Straub's claim that he went to the airport on the afternoon of the robbery to pick up two of the men who later testified as alibi witnesses, the timing of his arrival as pinned down by the DIA index evidence would ultimately have undercut his alibi and impeached his credibility.

> Straub testified at trial, consistent with what he told the police in 2006, that he had been at DIA at the time of the robbery.   And his counsel so argued.   This was a true alibi.   [State case law citation omitted].   Had Straub introduced the DIA index evidence at trial, however, he could not have claimed to have been at DIA at the time of the robbery. Instead, the evidence would have shown that a vehicle registered to Straub arrived at DIA at 2:31 p.m., between 29 and 38 minutes after the suspect left the Coyote Ugly.   The DIA index evidence thus fails to support—and indeed undermines—a true alibi defense.

> This unaccounted for window of time—between the suspect's exit from Coyote Ugly and when Straub's vehicle arrived at DIA—substantially diminishes the exculpatory value of the evidence.

> Attached to Straub's Crim. P. 35(c) motion were affidavits from acquaintances attesting to the length of time required to drive from Coyote Ugly to DIA.   These times ranged from thirty-one to thirty-nine minutes. But the prosecution's investigator, Richard Polack, also testified at trial that the drive from downtown Denver to DIA at that time of day takes between twenty-five and twenty-seven minutes. Even assuming, therefore, that the perpetrator of the robbery left Coyote Ugly at the later time shown on surveillance video (i.e., 2:02 p.m.), it is still plausible that Straub could have driven hurriedly from Coyote Ugly and arrived at DIA within twenty-nine minutes, or by 2:31 p.m.   We share the postconviction court's view that, "[h]ad Defendant's vehicle [instead] been shown entering DIA just 10

minutes after he allegedly fled the scene of the robbery, the result of the case may have been different." But this is not such evidence.

(Docket No. 39 at 41-43).

Applying the materiality standard in *Bagley*, the Colorado Court of Appeals then rejected Applicant's *Brady* claim on the following grounds:

> Previously, . . . we concluded that Straub had failed to sufficiently allege that his counsel's failure to investigate the DIA index was prejudicial. Because the evidence at issue here—the DIA index—and the applicable legal standard are essentially the same as in Part III.A.1, we adopt that analysis. For the reasons set forth in Part III.A.1, including the inculpatory nature of the DIA index evidence, we conclude that Straub's allegations are insufficient to show a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. Because Straub's *Brady* claim fails on the materiality prong, it was not error for the postconviction court to summarily deny his claim without a hearing.

(*Id.* at 58-59).

### b. AEDPA analysis

The Colorado's Court of Appeals applied the correct legal standard for materiality set forth in *Bagley* and determined that the DIA license plate index evidence was not material. The question for this Court is whether that determination was a reasonable application of *Bagley* and *Brady*. Although the DIA license plate index showed Applicant's vehicle entering DIA at 2:31 p.m., other evidence supported a reasonable inference that Applicant could have committed the crime at 2:02 p.m. and still driven to DIA by 2:31 p.m. In addition, two bar employees testified that they recognized the robber as Applicant, who was their former boss and co-worker, despite his wearing a ski mask and attempting to disguise his voice. Further, Applicant's DNA was found on a ski mask discarded on the stairs outside the back door of the bar following the robbery.

Considering the totality of the evidence at trial, fair-minded jurists could disagree about whether the exculpatory value of the DIA license plate index evidence was enough to create a reasonable probability that Applicant would have been acquitted had the evidence been introduced at trial.   Moreover, the undisclosed evidence did not bolster Applicant's other defense at trial – that he was framed for robbery by two bar employees and his former housemate.   The Court finds and concludes that the Colorado Court of Appeals' decision was a reasonable application of *Brady* and was based on a reasonable determination of the facts in light of the evidence presented in the state court proceeding.

Applicant's first *Brady* claim (claim 1(a)) is dismissed.

### 3. Failure to disclose witnesses' criminal histories and financial debts

### a. Colorado Court of Appeals decision

In *Straub II*, the Colorado Court of Appeals resolved Applicant's second *Brady* claim as follows:

> Straub also contends that he is entitled to an evidentiary hearing on his claim that that the prosecution failed to disclose to the defense the criminal histories of three prosecution witnesses (C.B., M.B., and R.C.). We are unpersuaded.
>
> Straub's Crim. P. 35(c) motion alleged the following facts, which are supported by the record:
>
> • C.B., M.B., and R.C. testified as prosecution witnesses;
>
> • the prosecution failed to disclose criminal histories for C.B., M.B., or R.C.; and
>
> • criminal histories Straub obtained after trial showed that R.C. had served a deferred sentence for felony theft and owed $14,000 in debts and restitution; that M.B. had a wage

garnishment entered against her; and both M.B. and C.B. had outstanding warrants for misdemeanors.[4]

There is no dispute that the prosecution failed to disclose these criminal histories in violation of Crim. P. 16. But neither R.C.'s felony conviction, which was dismissed in 2007, nor C.B. or M.B.'s misdemeanors would have been admissible at trial for general impeachment purposes. [*People v.*] *Silva*, 987 P.2d [909,] 918 [(Colo. App. 1990)] (evidence of misdemeanor charge or conviction inadmissible for general impeachment purposes); [*People v.*] *Wright*, 678 P.2d [1072,] 1074 [(Colo. App. 1984)] (felony conviction expunged after completion of deferred sentence inadmissible for general impeachment purposes). Nor are outstanding money debts subject to the mandatory disclosure requirements of Crim. P. 16, and so the prosecution's failure to disclose them as impeachment material does not constitute a *Brady* violation.

We must, therefore, consider whether the evidence is material in relation to Straub's alternative suspect theory. Straub contends that, had the evidence been disclosed, defense counsel could have used the information to cross-examine the witnesses to show that their outstanding debts created motive to commit the robbery, and that their outstanding warrants provided motivation for the witnesses to curry favor with the prosecution by testifying against Straub. For the reasons set forth in Part III.A.2, we are unpersuaded. Modest financial debts are only minimally probative of the debtor's motive to commit armed robbery. Similarly, outstanding misdemeanor warrants are only minimally probative of whether a witness would provide false testimony to curry favor with the prosecutor's office. Thus, we cannot conclude that this evidence, had it been disclosed, would have so strengthened Straub's alternative suspect defense as to create a reasonable possibility of a different outcome to the trial. We, therefore, affirm the postconviction court's summary denial of this claim without a hearing.

(Docket No. 39 at 59-61).

In Part III.A.2 of the decision, the state appellate court further determined:

There are additional stumbling blocks for Straub's alternative suspect theory which support our conclusion that introduction of this new evidence would not have created a reasonable possibility of a different outcome. For example, Straub himself testified that R.C.—the gunman in the alternative suspect theory of the crime—had left town the morning of

---

4 *See* R., Court File, at 412-447.

the robbery.   In addition, Straub fails to explain how C.B., M.B., and R.C.,
whom Straub argues framed him for the robbery, could have known that
he would not have a verifiable alibi.   Had Straub been able to rebut their
identification with a verified alibi, criminal suspicion would have certainly
shifted onto the accusers.   The witnesses thus would have assumed a
great deal of additional risk by falsely identifying Straub for a crime they
committed, when they could have instead simply said they were unable to
identify the robber.   Evidence of the witnesses' criminal histories and
financial debts, had it been introduced at trial, would not have closed
these gaps in Straub's alternative suspect theory.

(Docket No. 39 at 47-48).

### b. AEDPA analysis

This Court may not review the Colorado Court of Appeals' determination that the

outstanding misdemeanor warrants and expunged felony conviction were inadmissible

for impeachment purposes under Colorado law.   *See Bradshaw v. Richey*, 546 U.S. 74,

76 (2005) (recognizing that a federal habeas court is bound by a state appellate court's

determination of issues of state law).   Applicant fails to explain how the inadmissible

information could have led to the discovery of admissible evidence that trial counsel

could have used on cross examination.   *See Wood v. Bartholomew*, 516 U.S. 1, 6

(1995) (per curiam) (concluding that a habeas petitioner's "mere speculation" that

inadmissible polygraph results could have led defense counsel to "additional evidence

that could have been utilized" did not meet "the standards we have established" under

*Brady*).

The Colorado Court of Appeals recognized that the undisclosed information

about the prosecution witnesses' legal debts and outstanding misdemeanor warrants

was minimally probative of the witnesses' motive to commit robbery and to curry favor

with the prosecution.   However, given the holes in the alternate suspect defense, the

state appellate court reasonably determined that even if the defense had been able to establish a motive, there was no reasonable possibility that evidence of a possible motive would have resulted in an acquittal.

Upon careful review of the state court record, the Court finds that the Colorado Court of Appeals' determination that Applicant was not prejudiced by the prosecution's failure to disclose information about the prosecution witnesses' criminal histories and financial debts was a reasonable application of *Brady* because not "all 'fairminded jurists' would agree that the State got it wrong."  *Stouffer* v. *Trammell*, 738 F.3d 1205, 1221 (10th Cir. 2013) (quoting *Harrington*, 562 U.S. at 102).  Further, the state appellate court's decision was based on a reasonable determination of the facts in light of the evidence presented in the state court proceeding.

Applicant's second *Brady* claim (claim 1(b)) is dismissed.

## B. Sub-claim 2(a)

In sub-claim 2(a), Applicant contends that the prosecutor engaged in misconduct by suggesting, through cross-examination of defense witnesses and in closing argument, that Applicant had the burden to prove his innocence.  (Docket No. 4 at 5, 14-21).

### 1. Applicable Supreme Court law

It is axiomatic that a criminal defendant cannot be required to prove his innocence.  *See Mullaney v. Wilbur*, 421 U.S. 684, 703 (1975).  In evaluating a claim that the prosecutor engaged in misconduct by attempting to shift the burden of proof, the court considers whether the prosecutor's comments "'so infected the trial with

unfairness as to make the resulting conviction a denial of due process.'" *Darden v.*

*Wainwright*, 477 U.S. 168, 180 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637,

643 (1974)).   *See also Parker v. Mathews*, 567 U.S.37 (2012) (recognizing that

*Darden* provided the "clearly established Federal law" to habeas petitioner's claim of

prosecutorial misconduct).   In applying this demanding standard, "it is not enough that

the prosecutors' remarks were undesirable or even universally condemned." *Darden*,

699 F.2d at 1036.   *See also United States v. Young*, 470 U.S. 1, 11 (1985)

("Inappropriate prosecutorial comments, standing alone, would not justify a reviewing

court to reverse a criminal conviction obtained in an otherwise fair proceeding.").

Moreover, "a court should not lightly infer that a prosecutor intends an ambiguous

remark to have its most damaging meaning or that a jury, sitting through a lengthy

exhortation, will draw that meaning from the plethora of less damaging interpretations."

*Donnelly*, 416 U.S. at 637.   The court examines "the entire proceedings" to determine

whether a prosecutor's remarks rendered the trial fundamentally unfair.   *Donnelly*, 416

U.S. at 643.

**2. prosecutorial misconduct in cross-examination**

**a. Colorado Court of Appeals decision**

In *Straub I*, the Colorado Court of Appeals analyzed Applicant's prosecutorial

misconduct claims under the following legal standards:

> The prosecution bears the burden of establishing beyond a
> reasonable doubt every element of the offense with which the defendant is
> charged.   *People v. Santana*, 255 P.3d 1126, 1130 (Colo. 2011). The
> defendant does not have the burden of proving his or her innocence, and
> it is impermissible for the prosecution to shift the burden of proof through
> argument or comment. *Id*. Because an alibi defense is not an affirmative

defense, it does not change the prosecution's burden. *People v. Huckleberry*, 768 P.2d 1235, 1239 (Colo. 1989) ("The defense of alibi does not require proof or disproof of factual issues beyond those necessary to establish the elements of the offense charged.").

. . .

We must first assess whether improper remarks were made and, if so, then address whether the misconduct warrants reversal. *See Domingo-Gomez v. People*, 125 P.3d 1043, 1048 (Colo. 2005).

If the prosecution's questions and comments imply that a defendant has the burden of proof, we must evaluate them in light of the entire record to assess whether the burden was actually shifted. *Santana*, 255 P.3d at 1131.

. . .

"[T]he context in which challenged prosecutorial remarks are made is significant, including the nature of the alleged offenses and the asserted defenses, the issues to be determined, the evidence in the case, and the point in the proceedings at which the remarks were made." *Harris v. People*, 888 P.2d 259, 266 (Colo. 1995).

(Docket No. 4 at 32-34).

The state appellate court then summarized the trial proceedings relevant to

Applicant's claim that the prosecutor attempted to shift the burden of proof during cross

examination of defense witnesses:

During opening statements, defense counsel asserted that at the "exact time" of the robbery, defendant was at DIA. However, only limited evidence in the form of oral testimony supported this assertion. One defense witness testified on direct examination that on the day of the robbery, his flight to DIA arrived on time, and defendant met him at the baggage claim area. Defense counsel did not elicit testimony about the time of his arrival or any additional evidence which would have confirmed his testimony.

On cross-examination, the witness could remember neither the flight number nor the airline, and the prosecutor asked him, without objection from defendant, whether anyone had asked him to bring a copy of his plane ticket when he came to testify, to which the witness responded, "No."

Another defense witness, who described himself as a close friend of defendant, testified that on the day of the robbery, he and defendant had been running errands before driving to the airport to pick up two people. He also stated that the "no-later-than time was 2 o'clock to be there to pick them up" and that he believed they arrived at the airport on time.   The witness testified that he found it hard to remember many details of the day, however, because the night before, he had arrived in Colorado after driving a rented U-Haul truck from the State of Washington, and he had slept little.

On cross -examination, the prosecution asked a series of questions, without objections from defendant, about steps the witness presumably could have taken, after learning he was listed as a witness, that might have been helpful to defendant's case, including contacting the district attorney's office, providing a description and license plate number of defendant's vehicle to police, or producing receipts from the day's errands or from U-Haul.   The prosecutor also implied that the witness had been remiss for failing to take such steps by eliciting testimony that the witness was aware of the charges against defendant for more than a year before the trial.   On redirect examination, defense counsel elicited testimony which implied that the lack of such evidence was attributable to the fact that defendant was not charged with the robbery until a year afterward.

Defendant testified in this case, but his direct testimony about his whereabouts at the time of the robbery consisted of only his statement that when he was interviewed after the robbery, he told the police detective that he was picking up people at the airport.   On cross-examination, defendant testified that he told the detective that he left for the airport "about 1:30" and "[he] went to the airport to pick up two guys that were coming in from California."   He testified further:

[PROSECUTOR:] How long did it take to get to the airport that day?

[DEFENDANT:] I can't say for sure.

[PROSECUTOR:] Where did you leave from?

[DEFENDANT:] You know, I don't know for sure when [sic] I left from. We went to several different stops that day.

[PROSECUTOR:] What time did you get to the airport?

[DEFENDANT:] Exactly the time, I don't know. It was around 2:00 o'clock.

(Docket No. 4 at 35-37).[5]

The Colorado Court of Appeals determined that the prosecutor's questions did not exceed the permissible scope of cross examination under Colorado law (Docket No. 4 at 39-40); that Colorado law did not "preclude the prosecution from questioning defense witnesses about the lack of evidence to support their own testimony" (*id.* at 41); and, ultimately, that "the prosecutor's questioning of the defense witnesses here was not improper" (*id.*) and "did not violate defendant's rights" (*id.* at 44).

### b. AEDPA analysis

Because the Colorado Court of Appeals analyzed Applicant's prosecutorial misconduct claim under a state law standard that was consistent with *Darden* and *Donnelly*, the decision was not contrary to Supreme Court law. Therefore, the Court must determine whether the state court decision constituted an unreasonable application of *Darden*.

The prosecutor's cross examination of defense witnesses concerning the lack of evidence to corroborate their testimony about Applicant's whereabouts at the time of the robbery was proper based on the evidence already presented to the jury. *See, e.g., Kentucky v. Stincer*, 482 U.S. 730, 737 (1987) (noting that cross-examination is "designed to promote reliability in the truth-finding functions of a criminal trial."). *See*

---

5 *See also* R., 4/30/08 Trial Tr., Felix testimony, at 706-09; Hove testimony, at 736-42, 752-56; Straub testimony, at 786-98.

*also United States v. Gomez-Olivas*, 897 F.2d 500, 503 (10th Cir. 1990) (it is not improper for the prosecutor to highlight a lack of corroborating evidence to support the defense theory so long as the defendant's Fifth Amendment privilege is not infringed). Consequently, the Court finds that the Colorado Court of Appeals' determination that the prosecutor did not improperly shift the burden of proof to Applicant during cross-examination of defense witnesses was not an unreasonable application of the *Darden* standard. Further, the state appellate court's decision was based on a reasonable interpretation of the facts in light of the evidence presented in the state court proceeding.

Applicant's first allegation of prosecutorial misconduct in sub-claim 2(a) is dismissed.

### 2. prosecutorial misconduct in closing rebuttal argument

### a. Colorado Court of Appeals' decision

In addressing Applicant's second claim of prosecutorial misconduct, the Colorado Court of Appeals summarized the prosecutor's closing rebuttal argument as follows:

> During closing argument, defense counsel stated that "the evidence is clearly uncontroverted that this man was at DIA when it happened." During rebuttal closing argument, the prosecutor posed the following rhetorical questions:

> What would a reasonable person do in the circumstances that Brian Straub found himself in? What does he have to prove? What does he do? He provides not a vehicle description, nor a license plate. Nothing.

> The prosecution continued in this vein, stating, "You bring in two guys. . . . Two guys that have had to have known about this for over a year. And they do absolutely nothing, and defendant does absolutely nothing." After the prosecutor finished her statement, defendant objected

that the prosecution was shifting the burden to the defense, but the court overruled the objection.   Defendant, at that time, did not request the court to instruct the jury on the burden of proof, nor did he request a mistrial.

(*Straub I*, Docket No. 4 at 37-38).

The state appellate court then rejected the prosecutorial misconduct claim on the

following grounds:

First, although the prosecution did not specifically argue that defendant carried the burden of proof, she asked rhetorically, "What does he have to prove?"   Although this comment is inartfully phrased, it was apparently meant to question the weight to be given to the evidence defendant had offered to support his alibi.   In the context of three days of testimony and arguments of counsel, it was also brief and isolated. Moreover, the prosecutor later explained her position as follows:

There was plenty of time for the defendant to do the crime and get to the airport, but I don't have to disprove that, ladies and gentlemen.

All I have to prove is he was there. He did this crime.

Under these circumstances, we are not persuaded that the prosecutor intended to convey that defendant has the burden of proof, and it is unlikely that such a brief comment would have caused the jury to think the burden was on defendant to prove his innocence.

Second, in responding to the comments of defense counsel—such as his contention that "clearly uncontroverted" evidence proved that defendant was at DIA at the "exact time" of the robbery—the prosecutor was entitled to emphasize the dearth of evidence to support the defendant's theory of the case. [State case law citations omitted]. A fortiori, the prosecution may challenge the credibility of testifying alibi witnesses based on their failure to provide evidentiary support for their testimony.

This is particularly so in light of defense counsel's contention that the police failed to adequately investigate defendant's alibi and were remiss for "never check[ing] any of the surveillance cameras they have down at DIA." Based on this criticism of how defendant's case was handled, the prosecutor was entitled to try to show that additional investigation into defendant's alibi would not have yielded relevant

evidence.

Third, the jury was instructed about the prosecution's burden of proof by the court at both the beginning and end of trial, as well as by defense counsel. In the absence of evidence to the contrary, we presume that the jury followed the trial court's instructions. [State case law citation omitted].

Therefore, we conclude that the prosecutor's . . . comments during rebuttal closing argument did not violate defendant's rights.

(*Id.* at 41-44).[6]

### b. AEDPA analysis

In determining whether the Colorado Court of Appeals' decision was a reasonable application of *Darden*, the Court considers relevant decisions from the Tenth Circuit to inform its analysis.

The Tenth Circuit has recognized that it is not improper for a prosecutor to argue in closing that the evidence does not support the defense theory. *See Morris v. Workman*, No. 09-6248, 382 F. App'x 693, 696 (10th Cir. June 11, 2010) (unpublished) (citing *United States v. Simpson*, 7 F.3d 186, 190 (10th Cir.1993) (collecting cases permitting prosecutorial comment on lack of evidence supporting defendants' theories). *See also Trice v. Ward*, 196 F.3d 1151, 1167 (10th Cir.1999) ("Although a prosecutor may not comment on a defendant's decision to refrain from testifying, *see Griffin v. California*, 380 U.S. 609, 615 (1965), he [or she] is otherwise free to comment on a defendant's failure to call certain witnesses or present certain testimony"). Moreover,

---

6 *See also* R., 4/28/08 Trial Tr. at 61-62 (initial jury instructions on burden of proof); 4/30/08 Trial Tr. at 827-28 (jury instructions before closing arguments); *id.* at 842, 852, 854, 60 (defense closing); *id.* at 864-865, 868 (prosecution rebuttal closing).

prosecutors have "considerable latitude" to respond to an argument of opposing counsel. *United States v. Herron*, 432 F.3d 1127, 1136 (10th Cir. 2005).

The Court finds that the Colorado Court of Appeals reasonably determined that the prosecutor's comment "What does he have to prove?", considered within the context of the entire trial proceeding, was ambiguous and could be reasonably construed as a suggestion that Applicant's alibi defense was not credible. Even if the prosecutor's comment was improper, the remark was tempered by the prosecutor's reminder to the jurors that their verdict must be based on the evidence presented at trial and not the arguments of counsel. (R., 4/30/08 Trial Tr. at 860, 862). The prosecutor also told the jurors at the end of her rebuttal "[a]ll I have to prove is he was there. He did this crime" and further stated that the evidence demonstrated Applicant was guilty. (*Id.* at 868).

Moreover, the jury was twice instructed by the trial court that arguments of lawyers are not evidence, that the defendant is presumed innocent until proven guilty, and that the burden of proof is with the prosecution. (R. 4/28/08 Trial Tr. at 61-63; 4/30/08 Trial Tr. at 827-28; Court File, at 81, 85). "It is an "almost invariable assumption of the law that jurors follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). *See also Francis v. Franklin*, 471 U.S. 307, 324, n. 9 (1985). ("[We] presum[e] that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them.").

Under Tenth Circuit law, a prosecutor's comments that the defendant failed to corroborate his defense theory do not shift the burden of proof to the defendant when

the trial court gives "subsequent instructions to the jury that arguments of lawyers are not evidence, that the burden of proof is with the government, and that the defendant has no burden to prove innocence, to call witnesses, or to produce any evidence at all." *Gomez-Olivas*, 897 F.2d at 503-504.   *See also Sanchez v. Bryant*, No. 16-6027, 652 F. App'x 599, 606 (10th Cir. June 9, 2016) (unpublished) (denying a certificate of appealability on applicant's claim of prosecutorial misconduct based on improper burden-shifting in closing argument where prosecutor commented on a lack of evidence to substantiate applicant's defense theory, but also acknowledged the State's burden to prove guilt, which the evidence had established).

Applicant argues in the Amended Application that the jurors did not follow the trial court's instructions and that he was prejudiced by the prosecutor's comment, as evidenced by the following question from the jury during deliberations: "Could the defense have asked for time (a recess) to gather/check evidence on Monday, Tuesday, or Wednesday morning?   (Docket No. 4 at 21; R., Sealed Documents, at 51).   The trial court responded: "It is not appropriate for me to answer that question."   (R., Sealed Documents, at 51).[7]  Applicant maintains that the jury was clearly confused about which party had the burden of proof and the question indicated their belief that the defense "had failed to gather enough evidence to prove the alibi defense." (Docket No. 4 at 21).

The Colorado Court of Appeals did not reference the question from the jury in *Straub I*.   However, the state appellate court "presume[d] that the jury followed the trial court's instructions" because there was an "absence of any evidence to the contrary."

---

7 *See also* R., 5/2/08 Trial Tr. at 886-87.

(Docket No. 4 at 44).   The Court is mindful that the *Darden* standard is a general one,

"'leaving courts more leeway . . . in reaching outcomes in case-by-case

determinations.'"   *See Parker*, 567 U.S. at 48 (quoting *Yarborough v. Alvarado*, 541

U.S. 652, 664 (2004)).   At a minimum, fair-minded jurists could disagree about whether

the jury's question clearly indicated that the jurors were placing the burden on Applicant

to prove his innocence, instead of following the trial court's instructions.

Although it is a close question, upon careful consideration of the state court

record, the Court is unable to find that the Colorado Court of Appeals' determination of

the prosecutorial misconduct claim was "so lacking in justification that there was an

error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement."   *Harrington*, 562 U.S. at 102.   Therefore, the Court

concludes that the Colorado Court of Appeals' determination was a reasonable

application of the *Darden* standard and was based on a reasonable determination of the

facts in light of the evidence presented in the state court proceeding.

Applicant's second claim of prosecutorial misconduct in sub-claim 2(a) is

dismissed.

### C. Ineffective Assistance of Counsel Claims

The Sixth Amendment generally requires that defense counsel's assistance to

the criminal defendant be effective.   *See Strickland v. Washington*, 466 U.S. 668, 685-

86 (1984).   To prevail on a claim of ineffective assistance of counsel, a habeas

petitioner must show both that (1) his counsel's performance was deficient (i.e., that

identified acts and omissions were outside the wide range of professionally competent

assistance), and (2) he was prejudiced by the deficient performance (i.e., that there is a reasonable probability that but for counsel's unprofessional errors the result would have been different). *Id.*

"A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689). *See also Wiggins v. Smith*, 539 U.S. 510, 521 (2003). "There are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689.

"With respect to prejudice, . . . '[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 693.

### 1. Sub-claims 3(a) and 3(b)

Applicant contends that counsel was ineffective in failing to investigate the DIA license plate index, which counsel knew about prior to trial, and in failing to object to the prosecution's late disclosure of the DIA license plate database. (Docket No. 4 at 5, 22-23).

In *Straub II*, the Colorado Court of Appeals determined that defense counsel's failure to investigate the DIA license plate index was not prejudicial because: (1) evidence that Applicant entered DIA at 2:31 p.m. "would ultimately have undercut his alibi [that he was at DIA when the robbery occurred at 2:02 p.m.] and impeached his

credibility" (Docket No. 39 at 42); and, (2) even if Applicant had changed his defense strategy to argue that he could not have committed the robbery downtown at 2:02 p.m. and driven to DIA by 2:31 p.m., there was evidence at trial that the drive from downtown Denver to DIA took less than 29 minutes (*id.* at 43). The state appellate court concluded: "Because we are unpersuaded that the DIA index evidence would have had an exculpatory rather than inculpatory effect, Straub has failed to sufficiently allege prejudice under *Strickland*." (*Id.* at 44).

The "reasonable probability" standard of the *Strickland* inquiry is the same as the standard for determining the materiality of information withheld by the prosecution under the *Brady* analysis. *See Strickler*, 527 U.S. at 299. For the reasons discussed in conjunction with the Court's analysis of Applicant's *Brady* claim in Section IV.A.2, *supra*, the Court finds the Colorado Court of Appeals reasonably applied *Strickland* in concluding that, because there was no reasonable probability that admission of evidence about Applicant's arrival time at DIA on the day of the robbery would have resulted in an acquittal, Applicant was not prejudiced by defense counsel's failure to investigate the DIA license plate index before trial.

Further, although the Colorado Court of Appeals did not specifically address Applicant's separate allegation that defense counsel was ineffective in failing to object to the prosecution's late disclosure of the DIA license plate database, the Court presumes that the state appellate court denied relief on the merits under the prejudice prong of the *Strickland* inquiry. *See Johnson*, 568 U.S. at 301; *Harrington*, 562 U.S at 98. The Court concludes that the Colorado Court of Appeals' determination that

Applicant was not prejudiced by counsel's omissions concerning the DIA license plate index comported with *Strickland*. Further, the state appellate court's determination was reasonable in light of the evidence presented in the state court proceeding.

Sub-claims 3(a) and 3(b) are dismissed.

## 2. Sub-claim 3(c)

In sub-claim 3(c), Applicant maintains that counsel was ineffective in failing to investigate the criminal backgrounds and financial debts of three prosecution witnesses. (Docket No. 4 at 5-6, 23-24).

In *Straub II*, the Colorado Court of Appeals rejected Applicant's claim on the prejudice prong of the *Strickland* inquiry for the same reasons the state appellate court denied relief on the *Brady* claim. (Docket No. 39 at 45-48). This Court previously determined in Section IV.A.3, *supra*, that the state appellate court reasonable applied the prejudice prong of the *Brady* inquiry in denying relief on Applicant's claim that the prosecution failed to disclose the criminal backgrounds and financial debts of three prosecution witnesses. Therefore, the Court concludes that the Colorado Court of Appeals' determination of the related ineffective assistance claim, based on the identical prejudice inquiry, was reasonable under *Strickland.* The Court further finds that the Colorado Court of Appeals' determination was based on a reasonable determination of the facts in light of the evidence presented in the state court proceeding.

Sub-claim 3(c) is dismissed.

## 3. Sub-claim 3(d)

Applicant contends that defense counsel was ineffective in failing to adequately

prepare to undermine or rebut the prosecution's evidence that DNA in a ski mask found at the scene matched Applicant's DNA. (Docket No. 4 at 6, 24-25).

### a. Colorado Court of Appeals decision

In addressing Applicant's claim, the Colorado Court of Appeals first determined, under the objective prong of the *Strickland* inquiry, that defense counsel made a strategic decision not to challenge the DNA evidence found on the ski mask, as indicated by counsel's concession in opening statement that the ski mask belonged to Applicant, but the jury would be required to decide "who put it there." (*Straub II*, Docket No. 39 at 53).[8] The state appellate court then concluded:

> Even assuming that Straub has sufficiently alleged deficient performance, his DNA claims are speculative in nature and insufficient to establish prejudice under *Strickland.* For example, Straub emphasized that his counsel demonstrated a lack of familiarity with the DNA evidence at trial, but Straub does not identify the specific information that would have resulted from counsel's adequate investigation, consultation with a DNA expert, or testing of the second DNA source. Straub instead alleges only that generally counsel should have sought a DNA expert to determine if additional DNA testing was warranted. But such speculative allegations are insufficient to show prejudice. [State case law citations omitted].
>
> Straub's allegation of prejudice is also belied by the record. The prosecution's DNA expert testified at trial that the unidentified DNA on the mask amounted to a partial DNA profile or a mixed DNA profile (i.e., DNA from more than one person). The DNA expert testified that a reference sample would have been required to associate that DNA marker with another person, and that such association, even if it could be made, would have low probative value. Straub has not sufficiently alleged that additional investigation by counsel or testimony from a second DNA expert would have possibly resulted in a different conclusion. [State case law citation omitted]; *see also United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.").

---

8 *See also* R., 4/30/08 Trial Tr. at 79-80.

(*Id.* at 53-55).

### b. AEDPA analysis

The state appellate court's determination that trial counsel made a strategic decision not to challenge the DNA evidence is a factual determination that is presumed correct in this federal habeas proceeding. *See Newmiller v. Raemisch,* 877 F.3d 1178, 1200 (10th Cir. 2017) ("A state court's finding that an attorney's actions were the product of a strategic decision is a question of fact that must be rebutted by clear and convincing evidence under 28 U.S.C. § 2254(e)(1)"). Applicant fails to point to any clear and convincing evidence in the state court record to rebut the factual finding. Moreover, the strategy was fully consistent with one of the defense theories—that Applicant was framed by his former co-workers and housemate, who had access to his belongings, and, therefore, placed Applicant's ski mask on the back stairs outside the Coyote Ugly after the robbery.

Even if defense counsel made an objectively unreasonable decision not to conduct any further investigation of the DNA evidence, or to challenge the DNA evidence at trial, Applicant is not entitled to federal habeas relief unless the Colorado Court of Appeals unreasonably determined that Applicant was not prejudiced by counsel's deficient performance.

The prosecution's DNA expert testified on direct examination that the DNA found on the inside of the ski mask retrieved by the police matched Applicant's DNA. (R., 4/30/08 Trial Tr., Thurmond testimony, at 651, 661). The expert further testified that there was some unidentified DNA on the outside of the mask, which amounted to a

mixed DNA profile.   (*Id.* at 659-60).   On redirect, the DNA expert explained the

significance of the unidentified DNA:

>     PROSECUTOR: Want to talk to you about this allele that's found at
> this one little tiny marker.   Would that in any shape or form give rise to
> you to ask anybody to go out and get a second sample from anybody?
>
>     WITNESS:   It's not a lot of information.   I can use it to compare to
> a reference sample and see if someone else could possibly be the source
> of that minor component of that partial mixture, but it's not enough – it
> wouldn't be very strong weight if it did match someone.
>
>     PROSECUTOR:   So if I provided you with a reference sample that
> had a 9.3, would that tell you much of anything?
>
>     WITNESS:   I could look to see if someone was included or not
> included in that mixture, but in terms of how much probative weight I can
> give to it, it would be a very common statistic.

 (*Id.* at 668-69).

Applicant fails to explain how defense counsel's additional investigation of the

DNA evidence, or retention of a rebuttal DNA expert, would have assisted the defense

and resulted in a reasonable probability of an acquittal.   *See Boyle v. McKune*, 544

F.3d 1132, 1138 (10th Cir. 2008) (rejecting ineffective assistance claim based on failure

to retain expert where defendant "failed to show . . . that medical experts could have

reached a conclusion . . . contrary to the conclusions reached" by the prosecution's

witnesses); *United States v. Hunt*, No. 11-1081, 435 F. App'x 721, 726 (10th Cir. June 9,

2011) (unpublished) (rejecting ineffective assistance claim where the defendant failed to

"explain why the DNA evidence was unreliable, how a rebuttal expert would have aided

in his defense, or how his attorney's failure to call a rebuttal expert was prejudicial to

him") (citing *Snow v. Sirmons*, 474 F.3d 693, 724-25 (10th Cir. 2007)).

The Court finds that the Colorado Court of Appeals' reasonably applied *Strickland* in rejecting Applicant's ineffective assistance claim. Further, the decision was based on a reasonable determination of the facts in light of the evidence presented in the state court proceeding.

Sub-claim 3(d) is dismissed.

**4. Sub-claims 3(e), 3(f), 3(g) (failure to request a curative instruction), and 3(h)**

Applicant claims that defense counsel was ineffective in failing to: (1) object to prosecution questions of alibi witnesses MH and SF, which suggested that their lack of corroboration for their alibi testimony undermined the credibility of their testimony (sub-claim 3(e)) (Docket No. 4 at 25); (2) object to prosecution questions and argument suggesting Applicant had a burden to prove his innocence (sub-claim 3(f)) (*id.* at 26); (3) request a curative instruction after his burden-shifting objection to the prosecution's rebuttal closing argument was overruled (first allegation in sub-claim 3(g)) (*id.*); and, (4) in failing to rebut the prosecution's suggestion that alibi witnesses had not provided accurate contact information to, or otherwise cooperated with, the prosecution (sub-claim 3(h))[9] (*id.* at 25-26).

In *Straub II*, the Colorado Court of Appeals declined to address the ineffective assistance of counsel claims which were premised on prosecutorial misconduct because a division of the appellate court had rejected Applicant's prosecutorial

---

9 Although Respondents initially argued that sub-claim 3(h) was not properly exhausted in the state courts, upon further reflection Respondents have agreed, in their Answer, to "treat claim 3(h) as exhausted and adjudicated within the context of the [Colorado Court of Appeals'] adjudication of claims 3(e) and 3(f)." (Docket No. 68 at 44 n.11).

misconduct claims on the merits in S*traub I*.    (Docket No. 39 at 50).

This Court concluded in Section IV.B, *supra*, that the state appellate court's resolution of Applicant's prosecutorial misconduct claims in *Straub I* was reasonable under controlling Supreme Court law.    As such, the Court finds that Colorado Court of Appeals' disposition of the related ineffective assistance of counsel claims in *Straub II* was also reasonable because counsel's failure to raise an unmeritorious objection is not deficient performance under *Strickland*.    *See Lafler v. Cooper*, 566 U.S. 156, 167 (2012) ("Because the objection upon which his ineffective-assistance-of-counsel claim was premised was meritless, [petitioner] could not demonstrate an error entitling him to relief."); *Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir.2006) (holding that counsel was not ineffective for failing to assert a meritless argument at trial).    The Court further finds that the state appellate court's decision was based on a reasonable determination of the facts in light of the evidence presented in the state court proceeding.

Sub-claims 3(e), 3(f), 3(g) (failure to request a curative instruction) and 3(h) are dismissed.

### 5. Sub-claim 3(g) (failure to request a mistrial)

Applicant's second allegation in sub-claim 3(g) is that trial counsel was ineffective in failing to request a mistrial after his burden-shifting objection to the prosecution's rebuttal closing argument was overruled.    (Docket No. 4 at 26).    As discussed in the December 27, 2018 Order to Dismiss in Part, Applicant did not raise the allegation in his state post-conviction proceeding and, therefore, he must show that the claim is "substantial" under *Martinez v. Ryan*, 566 U.S. 1 (2012), in order to demonstrate cause

to excuse the procedural default.[10]   (Docket No. 57 at 12-14).

Upon review of the state court record, the Court finds that the ineffective assistance claim is not substantial under *Martinez*, and, alternatively, that the claim lacks merit under a *de novo* standard of review.   *See Moore v. Schoeman,* 288 F.3d1231, 1235 (10th Cir. 2000) (recognizing that the federal habeas court can dismiss an unexhausted claim on the merits where all of the applicant's claims are subject to dismissal on the merits); *Snow*, 474 F.3d at 717 ("We can avoid deciding procedural bar questions where claims can readily be dismissed on the merits").

Applicant's claim fails on the prejudice prong of the *Strickland* inquiry.   Under Colorado law, a "mistrial is the most drastic of remedies that should only be granted when the prejudice to the accused is too substantial to be remedied by other means." *People v. Santana*, 255 P.3d 1126, 1132 (Colo. 2011).   The state court record demonstrates that, at the conclusion of the prosecution's rebuttal argument, defense counsel objected that the prosecution was "switching the burden," but the trial court overruled the objection.   (R., 4/30/08 Trial Tr. at 865).   Further, the jury was twice instructed on the burden of proof and it is presumed, under *Richardson*, 481 U.S. at 206, that jurors follow their instructions.   Given these circumstances, Applicant has failed to demonstrate a reasonable probability that the trial court would have granted a defense motion for a mistrial following the prosecution's rebuttal closing argument.

---

10 In *Martinez*, the Supreme Court held that where a state permits a defendant to challenge the assistance of trial counsel only in a post-conviction proceeding, then the absence of post-conviction counsel, or ineffective assistance of post-conviction counsel, in an "initial review collateral proceeding" can constitute cause for the habeas petitioner's default of a "substantial" claim of ineffective assistance of trial counsel. 566 U.S. at 13-14.   Applicant was not represented by counsel in conjunction with his filing of a state post-conviction motion in the trial court. (*See* Docket No. 17-1 at 53).

Applicant's speculation that he may have been prejudiced by counsel's failure to request a mistrial is insufficient under *Strickland*. *See Ellis v. Raemisch*, 872 F.3d 1064, 1084 (10th Cir. 2017) (mere speculation that a defendant has been prejudiced by counsel's conduct is insufficient to meet the *Strickland* standard); *Byrd v. Workman*, 645 F.3d 1159, 1168-69 (10th Cir. 2011) ("[M]ere speculation is not sufficient to satisfy [the prejudice prong of the *Strickland* inquiry]") (internal citation omitted).

Sub-claim 3(g) is dismissed.

## V. Request for an Evidentiary Hearing

Applicant requests an evidentiary hearing on the claims raised in the Amended Application. (Docket No. 4 at 8; Docket No. 69 at 17).

Where a state habeas petitioner has presented his claims to the state courts and the federal habeas court has determined that he is not entitled to relief under § 2254(d), there is no basis for the federal court to grant an evidentiary hearing. *See Pinholster*, 563 U.S. at 181-82; *see also Christian v. Farris*, No. 17-6069, 701 F. App'x 717, 721 (10th Cir. July 7, 2017) (where habeas petitioner failed to "overcome the limitation of § 2254(d)(1) on the record that was before that state court," no evidentiary hearing is warranted) (quoting *Pinholster*). Moreover, a claim does not warrant an evidentiary hearing if it is capable of resolution on the record. *See Torres v. Mullin*, 317 F.3d 1145, 1161 (10th Cir. 2003).

All but one of the claims asserted in the amended application were resolved on the merits by the Colorado Court of Appeals, and this Court has determined, pursuant to § 2254(d), that the state appellate court's resolution of the claims was not contrary to, or

an unreasonable application of clearly established Federal law.   The remaining claim

was resolved under a *de novo* standard of review based on the state court record.

Therefore, Applicant is not entitled to an evidentiary hearing.

## VI. ORDERS

For the reasons discussed above, it is

ORDERED that the Amended Application for a Writ of Habeas Corpus Pursuant

to 28 U.S.C. § 2254 (Docket No. 4), filed *pro se* by Brian C. Straub, is DENIED and this

action is DISMISSED WITH PREJUDICE.   It is

FURTHER ORDERED that no certificate of appealability shall issue because

Applicant has not made a substantial showing of the denial of a constitutional right. 28

U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a); *Slack v. McDaniel*,

529 U.S. 473, 483-85 (2000).


Dated this 29th day of July, 2019.

BY THE COURT:

William J. Martínez
United States District Judge